Approved: _____
Katherine C. Reilly
Assistant United States Attorney

**ORIGINAL**

Before: HONORABLE DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York

**15 MAG 2161**

- - - - - - - - - - - - - - - - -X
                                     :   SEALED COMPLAINT

UNITED STATES OF AMERICA      :
                                     :   Violation of 18 U.S.C.
   - v. -                        :   § 371
                                     :
NOE CAMACHO,                     :
                                     :   COUNTY OF OFFENSE:
          Defendant.           :   BRONX
                                     :
- - - - - - - - - - - - - - - - -X

SOUTHERN DISTRICT OF NEW YORK, ss.:

      WILLIAM CLARK, being duly sworn, deposes and says that he is a Special Agent with the Internal Revenue Service Criminal Investigations ("IRS-CI"), and charges as follows:

COUNT ONE

(Conspiracy to Commit Theft of Government Funds)

      1.   From at least in or about December 2012 up to and including in or about August 2014, in the Southern District of New York and elsewhere, NOE CAMACHO, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Title 18, United States Code, Section 641.

      2.   It was a part and an object of the conspiracy that NOE CAMACHO, the defendant, and others known and unknown, would and did embezzle, steal, purloin, and knowingly convert to their use and the use of another, vouchers, money and things of value of the United States and a department and an agency thereof, to wit, the United States Department of the Treasury, which exceeded the sum of $1,000, and would and did receive, conceal, and retain the same with intent to convert it to their use and gain, knowing it to have been embezzled, stolen, purloined and converted.

OVERT ACTS

3. In furtherance of the conspiracy and to effect the illegal object thereof, NOE CAMACHO, the defendant, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about August 5, 2013, CAMACHO cashed approximately $62,000 in fraudulently obtained federal tax return refund checks, including a check mailed to an address in the Bronx, New York, through a check cashing business located in South Carolina.

b. On or about January 10, 2014, CAMACHO cashed approximately $25,000 in fraudulently obtained federal tax return refund checks, including checks mailed to addresses in the Bronx, New York, through a check cashing business located in South Carolina.

(Title 18, United States Code, Section 371.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4. I am a Special Agent with IRS-CI, and I have been personally involved in the investigation of this matter. This affidavit is based upon my own investigation, conversations with law enforcement officers and others and my review of documents obtained by law enforcement in connection with this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation.

The Scheme

5. Based on my experience as a Special Agent with IRS-CI, and conversations with other law enforcement officers, I am familiar with a common scheme involving the fraudulent use of stolen Social Security Numbers ("SSNs") to submit false and fraudulent federal tax returns. Typically, the scheme works as follows:

a. Participants in the scheme employ stolen SSNs assigned to residents of Puerto Rico and file fraudulent tax returns seeking tax refunds on behalf of those individuals.

b.  Residents of Puerto Rico are not obligated to file tax returns with the Internal Revenue Service (the "IRS") as long as all of the resident's income is derived from Puerto Rican sources. Thus, by using the SSNs of residents of Puerto Rico, participants in the scheme, among other things, minimize the risk that a legitimate federal tax return already will have been filed by the person whose identity has been stolen.

c.  The fraudulently filed tax returns falsely claim that the filer resides in one of the fifty states of the United States rather than in Puerto Rico.

d.  Participants in the scheme obtain the federal tax return refund checks in various ways, including by causing them to be mailed by the Treasury Department to addresses to which the participants have access.

e.  Fraudulently obtained federal tax return refund checks issued by the Treasury Department ("Treasury Checks") may be cashed with the assistance of either corrupt bank employees, corrupt check cashiers, or other individuals with access to checking accounts.

### The Investigation

6.  Based on my review of documents and records obtained in the course of this investigation, and my conversations with other individuals employed by the IRS, I have learned, in substance and in part, that:

a.  On January 4, 2013, an unknown individual filed an application with the IRS to obtain an IRS E-File Application Number ("E-FIN"), which is used to electronically file tax returns, in the name of a company ("Company-1") listing physical and mailing addresses in New York, New York.

b.  Approximately 140 tax refund checks were issued based on tax returns filed using Company-1's E-FIN.

c.  Approximately twenty nine of the tax refund checks issued based on tax returns filed using Company-1's E-FIN, worth approximately $220,000, were negotiated at a bank in South Carolina ("Bank-1") and deposited into the account of a business operating multiple gas stations and convenience stores in South Carolina, and also offering check cashing and money remitting services ("Check Cashing Business-1"). Each of those

3

approximately twenty nine checks was endorsed with the name "Camacho" on the back of the check.

    d. In total, more than 400 tax refund checks endorsed with the name "Camacho" on the backs of the checks (the "Camacho Checks") were deposited into Bank-1 accounts associated with Check Cashing Business-1, or its owner, between December 2012 and August 2014.  The value of the Camacho Checks is more than $2 million.

    e. The Camacho Checks each bore a mailing address in one of the fifty states of the United States and appear to have been mailed to that address.  Several of the Camacho Checks were mailed to addresses located in the Southern District of New York and, as such, had those addresses printed on them.

   7. Based on my conversations with an analyst at the IRS, as well as a review of IRS databases, I have confirmed that all of the Camacho Checks were the result of fraudulent returns, and I have learned the following, in particular and in part:

    a. I have confirmed that the employment information included in the tax returns that led to the issuance of the Camacho Checks is contradicted by other information in IRS databases.

    b. Typically, when an individual files a tax return attaching a Form W-2 Wage and Tax Statement, the individual's employer files corresponding documentation setting forth the wages paid to that individual with the IRS.  While residents of Puerto Rico are not required to file tax returns, their employers do still file wage and tax documentation as to the wages paid to them.  Consequently, when individuals filing fraudulent tax returns using the identities of Puerto Rican residents seek tax refunds based on false Form W-2s, their claims of employment are often contradicted by the documents filed by the true employers of the Puerto Rican residents.  In other cases, individuals filing fraudulent tax returns using the identities of Puerto Rican residents seek tax refunds based on false Form W-2s, which are not supported by any documents filed by the purported employers with the IRS.

    c. More than 150 of the tax returns that led to the issuance of the Camacho Checks contained employer information contradictory to other wage and tax documentation filed with the IRS by employers.  More than 200 of the tax

returns that led to the issuance of the Camacho Checks contained employer information unsupported by any wage and tax documentation filed with the IRS by employers.

        d. For example, one of the tax returns that led to the issuance of one of the Camacho Checks indicated that the individual filer ("Filer-1") worked for and received income from an employer located in New York, New York ("Employer-1"). However, a different company, operating in Puerto Rico, filed documents indicating that the filer actually worked for that company. I have spoken to a representative of Employer-1, who confirmed that Filer-1 has never worked for Employer-1.

        8. Beginning in or about August 2014, the owner of Check Cashing Business-1 ("Cooperating Witness-1") has cooperated with the Government.[1] Based on my conversations with Cooperating Witness-1, I have learned the following in substance and in part:

        a. Cooperating Witness-1 knew NOE CAMACHO, the defendant, as the operator of a business located at a commercial address in Beech Island, South Carolina ("Camacho Business-1").

        b. In or about December 2012 or January 2013, CAMACHO approached Cooperating Witness-1 to ask if Cooperating Witness-1 would cash tax refund checks at Check Cashing Business-1. Cooperating Witness-1 agreed to do so.

        c. Cooperating Witness-1's general practice with regard to the cashing of checks at Check Cashing Business-1 was to require the individual cashing the check to be present when the check was cashed, to present identification, and to provide a working telephone number. Cooperating Witness-1, however, permitted CAMACHO to cash checks without complying with these procedures. Cooperating Witness-1 also instructed his employees to permit CAMACHO to cash checks without complying with these procedures.

        d. Between in or about December 2012 and in or about August 2014, CAMACHO cashed numerous tax refund checks made payable to other individuals at Check Cashing Business-1.

---

[1] Cooperating Witness-1 is providing information to the Government in exchange for leniency in a federal criminal prosecution of Cooperating Witness-1. His information has been proven reliable and has been corroborated by other evidence obtained in the course of the investigation.

5

Cooperating Witness-1 deposited those checks into accounts associated with Cooperating Witness-1 and with Check Cashing Business-1 and related entities at Bank-1 and paid CAMACHO with the cash on hand at Check Cashing Business-1 or with cash withdrawn from the accounts held at Bank-1.

e. Cooperating Witness-1 wrote "Camacho" on the backs of the tax refund checks cashed by CAMACHO so that Cooperating Witness-1 would be able to identify the checks CAMACHO had cashed should the checks be rejected by Bank-1.

f. Between in or about December 2012 through in or about December 2013, Cooperating Witness-1 took approximately three percent of the face value of each of the tax refund checks cashed by CAMACHO as a fee for check-cashing services, consistent with Cooperating Witness-1's standard practice in charging a three percent fee for all checks cashed at Check Cashing Business-1. Between in or about January 2014 and August 2014, however, Cooperating Witness-1 increased his fee to approximately 5% of the face value of any tax refund check he cashed at Check Cashing Business-1, including each of the tax refund checks cashed by CAMACHO.

g. The tax refund checks CAMACHO cashed at Check Cashing Business-1 had typically been issued two to four weeks before CAMACHO cashed them. Beginning in approximately May 2013, Cooperating Witness-1 noticed that CAMACHO cashed a number of tax refund checks mailed to out of state addresses, including addresses in New York; the number of tax refund checks sent to out of state addresses increased further in or about July 2013. When Cooperating Witness-1 confronted CAMACHO about this issue, CAMACHO told Cooperating Witness-1, in sum and substance, that the tax refund checks were legitimate and had been sent to migrant workers employed on local farms.

h. Cooperating Witness-1 is not aware of CAMACHO ever bringing with him the individuals whose names were listed as the payees on tax refund checks CAMACHO cashed at Check Cashing Business-1. On most occasions, CAMACHO also did not provide any identifying documentation for the individuals listed as payees on the tax refund checks CAMACHO cashed at Check Cashing Business-1

i. On multiple occasions, CAMACHO sought to cash so many tax refund checks at one time that the total face value of the checks exceeded the amount of money Check Cashing Business-1 normally had on hand. On such occasions, CAMACHO

6

communicated with Cooperating Witness-1 by telephone, using a telephone number Cooperating Witness-1 understood to be used regularly by CAMACHO ("Camacho Phone Number-1"), to discuss the total face value of the checks CAMACHO had to cash and to find out when Cooperating Witness-1 had secured funds sufficient to cash those checks. On multiple occasions, Cooperating Witness-1 visited multiple branches of Bank-1 to secure enough cash to permit CAMACHO to cash the tax refund checks.

9. Based on my review of documents and records obtained in the course of this investigation, I have learned, in substance and in part, that:

a. Approximately twelve of the Camacho Checks were mailed by the IRS to the address associated with Camacho Business-1.

b. Approximately eight of the Camacho Checks were mailed by the IRS to a residential address in Beech Island, South Carolina ("Beech Island Address-1"). NOE CAMACHO, the defendant, listed Beech Island Address-1 on the income tax returns he filed in his own name with the IRS for tax year 2012 and 2013.

10. Based on my review of telephone toll records obtained in the course of this investigation, I have learned, in substance and in part, that:

a. On multiple occasions between in or about December 2012 and in or about August 2014, Cooperating Witness-1 called or received calls from Camacho Phone Number-1 in the period leading up to or immediately proceeding days on which (1) one or more of the Camacho Checks were deposited into Check Cashing Business-1's accounts at Bank-1 and/or (2) checks written on Check Cashing Business-1's accounts with Bank-1 and made out to "Cash" were cashed at Bank-1.

7

WHEREFORE the deponent prays that NOE CAMACHO, the defendant, be arrested and imprisoned or bailed, as the case may be.

William Clark
Special Agent
IRS-CI

Sworn to before me this
22 day of June, 2015

THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK